FILED
Aug 11, 2025
01:13 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Chevis Lee, | ) | Docket No. 2025-60-2116 |
| Employee, | ) | |
| v. | ) | |
| PAE Holdings Corp., | ) | State File No. 82916-2023 |
| Employer, | ) | |
| And | ) | |
| Indemnity Insurance Company of | ) | Judge Kenneth M. Switzer |
| North America, | ) | |
| Carrier. | ) | |

---

## EXPEDITED HEARING ORDER

---

Chevis Lee sought an order that PAE Holdings Corporation authorize surgery recommended by the treating physician. PAE contended that the proposed surgery is not reasonable and necessary based on utilization review reports. After an expedited hearing on July 31, 2025, the Court orders that PAE provide the surgery.

### Claim History

Mr. Lee, a firefighter, injured his neck and left shoulder while doing pushups at work on November 1, 2023. PAE accepted the claim. He treats with Dr. Ryan Snowden, an orthopedic spine surgeon.

In March 2024, Mr. Lee saw Dr. Snowden's physician assistant, who diagnosed cervicalgia with left upper-extremity radiculopathy and left-shoulder pain. She ordered additional physical therapy and an evaluation by a shoulder specialist.

A month later, Dr. Snowden personally examined Mr. Lee and noted a "positive left-sided Spurling's, light pain with range of motion of the shoulder. He is distally neurologically intact with C7 dysesthesia in the left arm." Dr. Snowden diagnosed cervical foraminal stenosis with radiculopathy. He wrote that Mr. Lee was still participating in

1

physical therapy principally for his neck. Dr. Snowden added that an epidural steroid injection might be necessary at C6-C7.

At the next visit in May, Dr. Snowden assessed cervical radiculopathy and left-shoulder pain, and he recommended still more physical therapy. He said an injection was unnecessary at that time.

In June, Dr. Snowden recorded that an MRI of the neck showed disc protrusion at C5-C6 and narrowing at C6-C7 into the nerve tunnels. He added that the pain originated from C6-C7 and C7-T1. He recommended injections targeting the right C7-T1 and left C6-C7 and an EMG nerve conduction study.

In July, Dr. Snowden noted that the EMG results were normal. Further, Mr. Lee's shoulder specialist recommended surgery, which PAE authorized. The injections were administered in August.

At the next visit in September, Dr. Snowden's physician assistant discussed potential surgery at C5-C7 and anterior cervical discectomy and fusion—the subject of this hearing. But they agreed that the shoulder took priority, and that surgery occurred in October.

After shoulder surgery, Mr. Lee returned to Dr. Snowden in early December reporting ongoing neck pain and intermittent tingling. The doctor wrote, "The patient has previously undergone conservative treatments, including physical therapy, anti-inflammatories, and epidural injections, which have not provided lasting relief. He has completed shoulder rehabilitation and is now ready to proceed with surgical intervention for his cervical radiculopathy."

Immediately afterward, PAE submitted the recommendation to utilization review, resulting in noncertification of the surgery. Dr. Kimberly Terry, a neurological surgeon, noted that Mr. Lee is a former smoker, and a current MRI report was unavailable. She explained that the previous MRI report was over one year old, and Dr. Snowden's evaluation in early December "did not include any specific physical exam findings."

Mr. Lee appealed to the medical directors, who agreed with the denial. The medical directors reasoned, "It is suggested that a current MRI of the cervical spine be obtained, and an office reevaluation with a complete description of current symptoms and current neurologic exam be obtained[.]"

PAE did not authorize a visit with a neurologist. Instead, Mr. Lee returned to Dr. Snowden on January 28. Notes from the visit state that on examination, a Spurling's test was positive on the left greater than the right, reproducing C6-7 radicular pain. Dr. Snowden wrote:

We have been treating the C5-6 and C6-7 levels with physical therapy, anti-inflammatories, and multiple epidural injections. The patient has also had shoulder surgery. Given the persistence of symptoms and the poor quality of the MRI read, we will have the MRI over-read by our neuroradiologist. We will continue to press forward with surgical clearance for the C5-C6 and C6-7 ACDF.

Dr. Snowden ordered another MRI, performed on January 29. The report documented "[m]oderate right and severe left foraminal stenosis at C6-7 with impingement of the exiting C7 nerve roots," and "[s]mall central disc protrusion at C4-5 mildly flattens the ventral cord. Moderate left foraminal stenosis with small impingement of the exiting left C5 nerve root."

PAE Holdings requested another utilization review, and on February 6, Dr. Steven Zielinski, a neurological surgeon, concluded that the surgery is not medically necessary. The report stated that among the documents he reviewed was an MRI performed on January 14, 2025, and read by "J. King III, M.D.," but neither party offered a copy of this report into evidence. Dr. Zielinski wrote:

Review of the current records did not identify the claimant's smoking status. *Review of the cervical MRI report did not identify significant stenosis at either C5-6 or at C6-7. No nerve compression or impingement was detailed. The cord was normal.* The current physical exam also did not detail any focal neurological defects in the upper extremities that would support the C5-6 or C6-7 levels as pain generators[.]

(Emphasis added).

Mr. Lee requested review by the medical directors, who agreed with the denial on February 20. They wrote: "It is suggested the ATP and the radiologist confer and issue a joint addendum for the 01.14.25 MRI. The alternative is a second opinion with the second opinion spine surgeon having access to actual MRI images.

PAE never offered a second opinion with a spine surgeon.

After Dr. Snowden learned of the denial in February, he made a "Note to Chart," stating:

We reviewed his updated MRI report. He has based on my read confirmed on this new report, notable severe left C6-C7 foraminal stenosis. He also has central disc protrusion flattening of the cord, particularly in the lateral recess at C5-C6 with [sic] both correlates to his left arm symptoms. Again, I am

3

recommending C5-6, C6-C7, and ACDF[,] which are better correlated on this updated MRI with a much more adequate read.

An addendum to the "Note" reads, "This patient is a nonsmoker/never smoker."

On March 10, Mr. Lee submitted the medical directors' February letter to utilization review, along with a copy of the January 29 MRI report signed by Dr. Snowden and read by Dr. Hilary Orlowski.[1] Utilization review characterized it as an "Inappropriate Duplicate Request." Registered nurse Miranda Kent wrote that "the same request will not be processed again, absent objective documentation of a material change in the injured employee's medical condition."

Mr. Lee appealed that denial again to the medical director, who agreed with it. Dr. Robert Snyder wrote:

Not medically supportable in the absence of a thorough neurologic examination and agreement between the radiologist and the surgeon as to the MRI findings. 01.28.25 note does not describe the location of symptoms to permit assessment of possible appropriate levels for surgery. There is apparently no neurologic deficit on suboptimal documentation of physical exam. Distinguishing shoulder from neck symptoms is not possible with current history and exam. An EMG might be useful with the history of shoulder surgery.

Afterward, Mr. Lee sent Dr. Snyder's denial to Dr. Snowden, who responded on April 14 with a dictated letter.[2] In part, it says:

[T]here is substantial documentation of symptoms, exam, imaging, and results of diagnostic testing; no further testing is warranted. He has had a positive response to multiple epidural injections, which have been diagnostic for his foraminal stenosis. He has significant C5-C6 and C6-C7 foraminal stenosis with a positive Spurling's. He is not having any associated weakness, but continues to have pain down the neck and left arm. At this point, there is no further indication for non-surgical management, and denial is unwarranted . . . given the year of medical records that are available for review.

---

[1] Mr. Lee's counsel wrote that she offered "a joint addendum to the 1/14/25 MRI." However, as previously stated, this MRI report was not introduced into evidence. Rather, the signed report counsel submitted to utilization review was the January 29 report. Counsel argued that Dr. Orlowski is a neuroradiologist but offered no proof of the doctor's specialty.

[2] The letter is dated January 28, 2025.

4

Mr. Lee returned to Dr. Snowden on April 22. Dr. Snowden wrote that Mr. Lee has a history of cervical foraminal stenosis "and has previously undergone an epidural injection, which provided temporary relief." Dr. Snowden recommended an injection at C6-7 and referred him to a physiatry specialist. As to the proposed surgery, Dr. Snowden wrote, "I documented a long course of nonsurgical measures and noted that the patient maintains positive Spurling's test results with hypoactive reflexes."

PAE submitted the injection to utilization review, which denied the recommendation. The medical director upheld it, reasoning that the September 2024 office note "indicates" that a recent injection provided no relief, so "repeating what has not worked [is] very unlikely to help."

For his part, Mr. Lee testified that he continues to have constant pain in his neck, which interferes with his shoulder rehabilitation. For most of every day, he also feels tingling and numbness in his arm, from his neck to fingertips. He has followed all of Dr. Snowden's instructions, including physical therapy for over one year. Mr. Lee wants to return to work as soon as possible and is frustrated by his lack of progress.

**Findings of Fact and Conclusions of Law**

To obtain his requested benefits, Mr. Lee must show a likelihood of prevailing at a hearing on the merits that he is entitled to the recommended fusion surgery. Tenn. Code Ann. § 50-6-239(d)(1) (2024); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Mr. Lee relied on Dr. Snowden's records and PAE on the utilization review reports.

The Appeals Board has held that "the utilization review system is intended to ensure the availability of quality medical care services for injured and disabled employees and to manage medical costs in workers' compensation matters." *Gentry v. Arapazuma,* 2022 TN Wrk. Comp. App. Bd. LEXIS 30, at *12 (July 19, 2022). Section 50-6-204(a)(3)(H) provides that treatment prescribed by an authorized physician "shall be presumed to be medically necessary[.]" The burden of production is on an employer who chooses to challenge treatment prescribed by an authorized physician. *Id.* at *14. A trial court "is not bound by the determination of the utilization review physician or the Bureau's Medical Director but is charged with conducting a de novo review to determine whether Employer rebutted the presumption that the prescribed treatment is reasonably necessary to treat the work injury." *Id.*

When expert opinions differ, the Court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991).

5

Here, the experts are all well-qualified, so this factor is neutral.

As to the circumstances of their examinations, Dr. Snowden is Mr. Lee's authorized treating physician and is presumed correct regarding the reasonable necessity of his recommendations. He personally evaluated Mr. Lee seven times over the past year, while his physician assistant saw him twice with Dr. Snowden reviewing and signing her records. During this time, Dr. Snowden was able to assess Mr. Lee's symptoms, response to various types of conservative treatment, and his credibility. "It seems reasonable that the physicians having greater contact with the Plaintiff would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." *Id.* at 677. This factor strongly favors Dr. Snowden's opinion over the other experts, who performed record reviews.

As for the information available to them, the utilization review physicians and medical directors reviewed all of Dr. Snowden's records, but some confusion exists as to whether Dr. Zielinski saw the January 29 MRI report. Dr. Zielinski wrote that he reviewed a January 14 report read by Dr. King, which is not in the record.

As to the importance of that information, Dr. Zielinski wrote that the MRI he saw "did not identify significant stenosis at either C5-6 or at C6-7. No nerve compression or impingement was detailed. The cord was normal." This conflicts with the January 29 MRI—the only one in the record. That MRI found "[m]oderate right and *severe left foraminal stenosis at C6-7 with impingement of the exiting C7 nerve roots,*" and "[s]mall central disc protrusion at C4-5 *mildly flattens the ventral cord. Moderate left foraminal stenosis with small impingement of the exiting left C5 nerve root.*" Simply put, this MRI, which Dr. Zielinski either did not see or inaccurately interpreted, documents very different findings.

Further, Dr. Zielinski did not see Dr. Snowden's "Note to Chart" stating that Mr. Lee is a "never smoker," or the April letter stating that Mr. Lee "has significant C5-C6 and C6-C7 foraminal stenosis with a positive Spurling's." This is all critical information that Dr. Zielinski overlooked. The factor favors a finding that Dr. Snowden's opinion should be credited.

PAE focused its arguments largely on Dr. Snyder's March denial. It contends that Dr. Snyder suggested as many as six measures that should be taken before the surgery can be considered reasonable and necessary. Of them, PAE argued that Dr. Snyder recommended "a thorough neurologic examination." Mr. Lee countered that PAE has never authorized a visit with a neurologist. Dr. Snyder also recommended "agreement between the radiologist and the surgeon as to the MRI findings." Mr. Lee responded that this took place; apparently Dr. Snowden and Dr. Orlowski conferred—although he offered no proof on this point, other than Dr. Snowden's electronic signature on the January 29

6

MRI. Dr. Snyder also wrote, "An EMG might be useful with the history of shoulder surgery." This was not authorized. Nor was a second opinion by a spine surgeon.

Considering the medical proof, since December, Dr. Snowden has been adamant that surgery is reasonable and necessary, after first offering conservative treatment for several months. Utilization review has taken place *four times* since then, and *every time* it has yielded an opinion that the proposed course of action is unwarranted. That occurred even for the last recommendation for an injection—more conservative treatment. That time, the medical directors wrote that the injection provided no relief. However, Dr. Snowden's January 28 letter and April 2025 notes said that the injection *did* provide temporary relief.

In sum, at every turn, PAE has thrown down a roadblock when Dr. Snowden has recommended surgery and now an injection. The doctor has attempted to follow some of the suggestions from the medical directors. At trial, Mr. Lee expressed respectful frustration, which this Court believes is appropriate under the circumstances.

Moreover, the doctors opposing the surgery have not presented other non-surgical options to relieve Mr. Lee's symptoms. He has tried conservative treatment with no significant improvement. Likewise, no doctor has said that Mr. Lee was not credible or that his symptoms were not real. The fact that Dr. Snowden is offering a possible solution must weigh in favor of surgery. The Appeals Board upheld a trial court order to authorize surgery, where the medical experts disagreed on its reasonable necessity, but they offered "no countervailing recommendations for reasonable and necessary medical treatment." *Burns-Herrera v. State Indus., LLC,* 2022 TN Wrk. Comp. App. Bd. LEXIS 37, at *17 (Sept. 12, 2022).

Finally, in addition to considering the *Orman* factors, live testimony by a lay witness may influence the trier of fact in the consideration of expert medical proof. *Caskey v. Powers Pizza, LLC*, 2015 TN Wrk. Comp. App. Bd. LEXIS 37, at *9 (Oct. 7, 2015). Mr. Lee credibly testified that he still suffers disabling neck pain along with tingling and numbness, and he wants to return to work. The Supreme Court has consistently held that an employee's assessment as to his or her own physical condition is competent testimony that is not to be disregarded. *Limberakis v. Pro-Tech Sec., Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *5-6 (Sept. 12, 2017).

The Court finds that PAE has not offered sufficient evidence to overcome the presumption attached to Dr. Snowden's opinion. The Court holds that Mr. Lee is likely to prevail at a hearing on the merits that he is entitled to surgery. PAE shall immediately authorize it. Unless an interlocutory appeal is filed, compliance with this order must occur by seven business days of the date below as required by Tennessee Code Annotated section 50-6-239(d)(3).

The Court sets a status hearing on **December 8 at 11:00 a.m. Central Time.** You must dial 615-532-9552 or 866-943-0025 to participate.

IT IS ORDERED.

**ENTERED August 11, 2025.**


*Kenneth M. Switzer*
_____
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**Appendix**

Exhibits:
1. Mr. Lee's Affidavit
2. Composite medical records

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent on August 11, 2025.

| Name | Certified Mail | Regular mail | Email | Sent to |
|------|---------------|--------------|-------|---------|
| Jill Draughon, employee's attorney | | | X | jdraughon@hughesandcoleman.com sconner@hughesndcoleman.com |
| David Deming, employer's attorney | | | X | ddeming@manierherod.com tjoiner@manierherod.com |


*Penny Shrum*

_____
Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____       ☐ Motion Order filed on _____

☐ Compensation Order filed on_____       ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*